Filed 8/11/22  In re M.P. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re M.P., a Person Coming Under the Juvenile Court Law. | B316646 <br> (Los Angeles County Super. Ct. No. 19CCJP03981A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MANUEL P. II, <br><br> Defendant and Appellant. | |

APPEAL from the orders of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Conditionally affirmed with directions.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

Manuel P. (father) appeals the juvenile court's orders terminating parental rights over his three-year-old son.  He argues that the orders are defective because the juvenile court did not comply with the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1900 et seq.) (Welf. & Inst. Code, § 224.2, subd. (b)).  The Los Angeles Department of Children and Family Services (the Department) committed error under ICWA, and its noncompliance was not harmless because there is "reason to believe" that at least one aspect of the further inquiry father identifies would lead to a different result.  (See *In re Dezi C.* (2022) 79 Cal.App.5th 769, 774 (*Dezi C.*).)

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

Father and Irene P. (mother) met in August 2016 and got married in July 2017.  They used methamphetamine together regularly; as mother once put it, we "met high and got married high."

2

M.P. was born in May 2019.  At the time of M.P.'s birth, both mother and M.P. tested positive for amphetamines and methamphetamines.

## II.     Procedural Background

In June 2019, the Department filed a petition asking the juvenile court to exert dependency jurisdiction over M.P. (1) because M.P. tested positive for drugs at the time of his birth, and because of (2) mother's history of drug abuse, including during her pregnancy with M.P. and (3) father's history of drug abuse.  Further alleging that the parents' conduct placed M.P. at "substantial risk" of "serious physical harm," the Department asserted that jurisdiction was appropriate under Welfare and Institutions Code section 300, subdivision (b).[1]

In August 2019, the court sustained the allegations in the petition and exerted dependency jurisdiction over M.P.  The court left M.P. in both parents' custody, and ordered family maintenance services—namely, it ordered the parents to complete substance abuse programs, and to participate in substance abuse testing, parenting classes, and individual counseling.

Following father's arrest for striking mother while she was holding M.P. in her arms, the Department in September 2019 filed a supplemental petition (under section 342) asking the juvenile court to exert dependency jurisdiction over M.P. based on an additional ground—namely, domestic violence between mother and father.  At the October 2019 hearing on the supplemental petition, father pled no contest to the new

---

1      All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

3

allegation. The court sustained the supplemental petition, removed M.P. from father and placed him with mother, ordered the parents to engage in domestic violence counseling in addition to their prior obligations, and issued a protective order in favor of mother.

Following mother testing positive for methamphetamines in October and December 2019 and violating the restraining order by allowing father to live in the family home, the Department in December 2019 filed a supplemental petition (under section 387) asking the juvenile court to alter the disposition order by removing M.P. from mother's custody in light of mother's recent conduct. At the February 2020 hearing on the supplemental petition, the court sustained the new allegation, removed M.P. from mother, and ordered family reunification services for both parents.

At the 12-month status review hearing (which was held in April 2021 rather than February 2021 because of COVID-related delays), the juvenile court found that the parents were only in partial compliance with their case plans, terminated further reunification services, and set the matter for a permanency planning hearing.

The court held the permanency planning hearing for M.P. in October 2021. At that hearing, mother waived her appearance and made it known that she supported adoption as the preferred permanent plan. Father argued for the application of the beneficial-relationship exception to termination of parental rights. (§ 366.26, subd. (c)(1)(B)(i).) After entertaining further argument from counsel, the juvenile court found M.P. to be adoptable, found no exception to adoption applied, and terminated both parents' parental rights.

4

### III. ICWA-related facts

Father and mother both repeatedly told the Department that they had no known Indian ancestry in their respective families. Both father and mother also filled out the written ICWA-020 form attesting that they had "no Indian ancestry as far as [they knew]."

Mother's mother (the maternal grandmother) died when mother was 3 months old, and mother was thereafter raised by other members of the maternal grandmother's family. Mother did not know her father, but mother has four older siblings—one of whom is 17 years older than her.

Based on this inquiry, the juvenile court expressly found that this was "not an ICWA case" and it had no reason to believe that M.P. was an "Indian child."

### IV. Appeal

Father filed this timely appeal from the termination of his parental rights.

## DISCUSSION

Father argues that the orders terminating his parental rights must be reversed because the Department failed to discharge its initial inquiry duties under ICWA and related California law to ask "numerous extended paternal and maternal family members known to the Department" whether M.P. may be an Indian child and thus entitled to the special protections afforded by ICWA. (§ 224.2, subds. (b) & (c).)

### I. Governing Law

#### A. *The initial duty to inquire*

ICWA was enacted to curtail "the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement." (*Mississippi Band of*

5

*Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 32.) To that end, under the ICWA and the corresponding statutes the California legislature enacted to implement it (§§ 224 -224.6), a juvenile court and the Department have duties aimed at assessing whether a child in a dependency action is an "Indian child." (§§ 224.2, 224.3, added by Stats. 2018, ch. 833, §§ 5, 7.) An "Indian child" is a child who (1) is "a member of an Indian tribe," or (2) "is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal law definition].) By its terms, this definition turns "'on the child's political affiliation with a federally recognized Indian Tribe,'" not "necessarily" "the child's race, ancestry, or 'blood quantum.'" (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882 (*Austin J.*), quoting 81 Fed.Reg. 38801-38802 (June 14, 2016).)

Under ICWA as amended, the Department and juvenile court have "three distinct duties." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*) [noting amendment's creation of three duties]; *Austin J., supra,* 47 Cal.App.5th at pp. 883-884 [same].) Only the first duty is at issue here: The initial "duty" of the Department and the juvenile court is "to inquire whether [a] child is an Indian child." (§ 224.2, subds. (a) & (b).) The Department discharges this duty by "asking" family members "whether the child is, or may be, an Indian child." (*Id.*, subd. (b).) This includes inquiring of not only the child's parents, but also others, including but not limited to, "extended family members." (*Ibid.*) For its part, the juvenile court is required, "[a]t the first appearance" in a dependency case, to "ask each participant" "present" "whether the participant knows or has reason to know that the child is an Indian child." (*Id.*, subd. (c).)

6

**B.** *The prejudice requirement*

Should an appellate court conclude that the juvenile court did not comply with its duty of initial inquiry under ICWA, the court's next task is to evaluate whether its noncompliance was prejudicial. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 740 (*Benjamin M*).) In *Dezi C.*, we recently held that deficiencies in the discharge of ICWA's initial duty of inquiry is prejudicial only if the juvenile court record or evidence proffered by the appealing party on appeal indicates "a reason to believe" that the child may be an Indian child. (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 774.) For example, a reviewing court would have "reason to believe" the Department's error was prejudicial if the record indicates that someone reported possible American Indian heritage and the Department never followed up on that information; if the record indicates that the Department never inquired into one of the biological parents' heritage at all (e.g., *Benjamin M.*, at p. 744); or if the record indicates that one or both of the parents is adopted and hence their self-reporting of "no heritage" may not be fully informed (e.g., *In re A.C.* (2022) 75 Cal.App.5th 1009, 1015-1016 (*A.C. 2022*)).

## II. Analysis

The Department does not dispute that there were extended family members involved in M.P.'s life that the Department failed to question. Because there is no question that the Department erred in conducting their initial inquiry, our role in determining whether substantial evidence supports the juvenile court's ICWA findings turns on whether those errors are harmless. (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 740, 742, citing Cal. Const., art VI, § 13.)

7

Turning to the prejudice inquiry, father proffers three reasons why there is "reason to believe" that a more fulsome inquiry by the Department might lead to a different outcome.

First, father generally asserts that the Department interviewed several relatives—a paternal grandmother, a paternal cousin, and maternal aunt—but did not ask them about M.P.'s possible Indian heritage. This assertion does not establish the requisite prejudice because there is nothing in the record to indicate that any of the three individuals father lists had any information which would create a "reason to believe" M.P. had Indian ancestry. Instead, father's sole observation is that "it does not appear" the Department asked those individuals about Indian ancestry. In essence, father is asking us to apply the "automatic reversal rule" for determining harmlessness which we previously rejected. (*Dezi C.*, *supra*, 79 Cal.App.5th at pp. 782-785.) We decline to revisit that ruling here.

Second, and along the same lines, father argues that the information that these individuals might have relayed if asked about M.P.'s Indian heritage was "readily obtainable" to the Department, and hence constitutes prejudice under the test articulated in *Benjamin M.* (See *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744; *In re Darian R.* (2022) 75 Cal.App.5th 502, 509-510.) To the extent *Benjamin M.* is read to find prejudice upon a mere failure to question an available person, we rejected that reading of *Benjamin M.* in *Dezi C.* (*Dezi C.*, *supra*, 79 Cal.App.5th at pp. 785-786.)

Third, father argues that that prejudice can be shown under *Dezi C.* itself. Specifically, father points to *Dezi C.*'s observation that "a reviewing court would have 'reason to believe' further inquiry might lead to a different result . . . if the record

indicates that one or both of the parents is adopted and hence their self-reporting of 'no heritage' may not be fully informed." (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779.) Because mother's mother died when mother was an infant and because mother's father was never present in her life, father urges that mother's self-reported disclaimer of Indian heritage is not "fully informed."

Father has a point. Although mother is not "adopted" and although mother's upbringing by her maternal relatives renders her opinion about her heritage on *that* side of the family "fully informed," the record indicates that mother did not know her father and that her knowledge of her heritage on her father's side of the family is consequently *not* fully informed. (Accord, *In re Y.W.* (2021) 70 Cal.App.5th 542 [mother was adopted, and did not know her biological family members]; *A.C. 2022*, *supra*, 75 Cal.App.5th 1009 [same].) What is more, there are ostensible avenues of investigation that were never explored—namely, the Department was aware that mother has four older siblings, who may have known the identity and heritage of mother's father and may be able to provide some insight as to whether mother (and hence, M.P.) has Indian heritage. Because these somewhat unusual facts establish that mother's denial of Indian heritage is *not* fully informed, there is reason to believe that further inquiry of the siblings and other maternal relatives who may have known mother's father would lead to a different outcome.

Because the record creates a reason to believe M.P. may be an Indian child, father has established prejudice.

### DISPOSITION

The juvenile court orders terminating parental rights are conditionally affirmed. The matter is remanded with directions to the juvenile court to order the Department to comply

9

with ICWA by making diligent efforts to interview mother's four older siblings and other extended family members who may have information about mother's father, and to follow up on any leads from those interviews.

Based on those efforts, if no further inquiry is required, the court's original order shall be reinstated.  If further inquiry is required, the court shall ensure that the Department complies with all applicable ICWA statutes and regulations, as well as related state statutes and rules.  After ICWA compliance, unless a tribe indicates that M.P. is an Indian child, the court shall reinstate the order terminating father's parental rights.  If M.P. is an Indian child, the court shall proceed in accord with all applicable ICWA statutes and regulations, as well as related state statutes and rules.

In all other respects, the orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
HOFFSTADT

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____,  J.
CHAVEZ

10